German Bank of London agt. Dash.

DALY Ch. J. and J. F. DALY, J.

---

# SUPREME COURT.

GERMAN BANK OF LONDON, LIMITED, agt. BOWIE DASH and another.

*Attachment—Facts which are not sufficient to justify a resort to the remedy—Disposal of the property of the plaintiff alone not sufficient—Code of Civil Procedure, section 636.*

The defendants had in store for plaintiff a quantity of coffee, to be held for it, with liberty to sell, and to pay the plaintiff, out of the proceeds, the amount due upon bills of exchange which it had discounted on the security of the property. The defendants sold the coffee, using the proceeds, which were more than sufficient to pay the drafts, in their business.

German Bank of London agt. Dash.

*Held*, upon a motion to vacate an attachment granted upon these facts, that the modified wording of section 636 of the Code of Civil Procedure has not changed the provision of section 227 of the former Code in this respect, and that the attachment cannot be sustained, because it has not been shown that the debtors either assigned, disposed of, or secreted, or were about to assign, dispose of, or secrete their property, with the intent to defraud their creditors.

*Held*, that the provision as to attachments differs in this respect from that providing for the making of an order of arrest; so that a debtor is liable to arrest, but not to seizure of his property by attachment, when he may have disposed of plaintiff's property or that of any other person with intent to defraud its owner.

*Special Term, December*, 1880.

MOTION to set aside an attachment.

*Aaron Pennington Whitehead*, for defendants.

*Wheeler H. Peckham*, for plaintiff.

DANIELS, *J.* — The affidavit made on behalf of the plaintiff and the receipts annexed to it establish the facts that the defendants had in store for the plaintiff 4,870 bags of coffee, to be held for it, but with liberty to sell it and to pay the plaintiff out of the proceeds the amount due to it upon bills of exchange which it had discounted on the security of the property. The affidavit shows that the defendants afterwards sold the coffee and made use of the proceeds, which were more than sufficient to pay the drafts, in their business, and in that manner appropriated them to their own use. Upon these facts the attachment against the defendants' property was issued, and they now insist that they were not sufficient to justify a resort to that remedy. It has not been shown that the defendants had disposed of, or were about to assign, dispose of, or secrete any of their own property with intent to defraud their creditors, but it has been claimed that they became liable to an attachment of their property because they had fraudulently disposed of the plaintiff's property.

As the statute defining the facts upon which an attachment might be issued before the enactment of the present Code, provided it could be done where the defendants were residents of the state, as these defendants are, for a fraudulent disposition of property, only when the property was that of the defendant (*Code of Procedure, sec.* 227), it was indispensable that it should be shown that the defendant either had or was about to dispose of his — or in case it was a corporation, of its — property with the intent to defraud creditors.

In the revision which has been made by the present Code upon this subject the terms " his " or " its " have been omitted (*Code Civil Procedure, sec.* 636, *sub.* 2), and on that account it is urged that a debtor is liable to the seizure of his property by attachment when he may have disposed of the plaintiff's property, or that of any other person, with intent to defraud its owner. In this respect the provision differs from a similar one made for the purpose of providing for the making of an order of arrest. There the language made use of is the same as it was in the preceding Code, making it still necessary that the debtor shall be shown either to have disposed, or that he is about to dispose of or remove his property with intent to defraud his creditors (*Code Civil Proeedure, sec.* 550, *sub.* 2). Both these remedies, in their nature, should depend very much upon the same state of facts, and there seems to be no reasonable propriety in requiring in the one case that the right shall be restricted to the disposition by the debtor of his own property with a fraudulent intent, while in the other the disposition of the property of any other person would also entitle the creditor to the remedial benefit of the statute. That was not, probably, what the legislature intended to do by means of these subdivisions. There would be no propriety in making one remedy dependent solely upon the disposition of the debtor's property, while the right to the other might be created by the disposition of the property of a stranger. The subdivision itself is not consistent with such construction

of its terms, for it is still necessary that the debtor shall be shown to have assigned, disposed of or secreted, or to be about to assign, dispose of, or secrete property with the intent to defraud his or its creditors, and they could not be defrauded by such a disposition of the property of a person who was in no sense a creditor. If the construction contended for on behalf of the plaintiff should be allowed to prevail, then any person who should intentionally convert the property of another would not only subject himself to an attachment at the suit of the owner, but at the suit also of every creditor he might have, which would be a result that it would be unreasonable to believe the legislature intended to provide for by this section of the Code. When the preceding section is considered with this one, it is further evident that it was not intended to subject him to the seizure of his other property by means of an attachment simply because of the existence of the fact that he had converted the property of the plaintiff; for by defining the cases in which an attachment may issue it has been required that only the cause of action itself shall be shown, but, beyond that, the additional fact necessary to bring the case within the provisions of section 636 must also be maintained. The conversion of the owner's property alone is not sufficient for that purpose. That merely establishes a cause of action, and to render the debtor liable to an attachment it must appear further that one of the facts exist which, according to the succeeding section, will entitle the plaintiff to that remedy. In other words, where the action is, as it may be, for the wrongful conversion of the plaintiff's property, it must be shown also that the defendant is either not a resident of the state or that he has departed from it to defraud his creditors, or to avoid the service of a summons, or conceals himself within it with that intent, or that he has removed, or is about to remove, property from the state, or has assigned, disposed of or secreted, or is about to assign, dispose, of or secrete property with the intent to defraud his creditors. His liability for the conversion of the property is not suffi-

cient to conform to these requirements, but the case must go further and establish the additional circumstance, where the application is of the nature of that made in this suit, that he has done some act intending, by means of it, to defraud his creditors, not merely for the purpose of depriving the plaintiff of his own property, but that the intent with which he has been actuated is to hinder, delay or defraud such persons as may properly be designated as his creditors.

In this case the plaintiff may maintain an action to recover the money which the defendants wrongfully appropriated to their own use, and in that form it would sustain the relation of a creditor to them as its debtors, but that of itself would fail to establish the additional circumstance which was intended to be required, that the debtors had, or were about to dispose of, assign or remove, or secrete their property to defraud their creditors. There was no necessity for such a change in the provisions of the law delaring the cases in which attachment might be issued, justifying the change of the nature of that contended for in this instance. As it stood before the enactment of the present Code it seemed to be ample, in the way of affording a remedy, to redress the rights of creditors whenever they might properly require the interposition of the courts. No such change was suggested in any quarter as that which would render the debtors property liable to an attachment in case he had only converted or wrongfully appropriated that of some other person; and the note of the commissioners to the article containing this section, and also to the section itself, in which they explain the reasons for the additions made by them, indicate no intention whatever of so enlarging the power to issue an attachment as to make it applicable to a case of that nature. To do so would subject debtors to risks and hardships entirely disproportionate to the act forming the subject of complaint. If the terms of the subdivision, as they are insisted upon, were followed, a debtor who should fraudulently appropriate to his own use the most insignificant article of another's property, would be liable to an

immediate seizure of his own at the suit of every creditor having a demand against him; which is a consequence that the legislature could not have intended to sanction by the enactment of these provisions. It is more consonant with the probability of the case, as no reason appeared to exist requiring a change in the law, that the words which restricted the authority to issue an attachment as they existed in the preceding law were inadvertently omitted from this section. The prevailing rule of construction where a statute has been revised, although its terms may to some extent have been changed, requires that it should still be attended with the same effect where no reason or intention seems to exist for enlarging or restraining it.

Upon this subject it has been held that where a law antecedently to a revision of the statutes is settled, either by clear expressions in the statutes or adjudications on them, the mere change of phraseology will not be deemed or construed a change of the law, unless such phraseology evidently purports an intention in the legislature to work a change (*case of Yates,* 4 *Johns.*, 318, 359; *Douglass* agt. *Howland,* 24 *Wend.*, 35, 47; *Matter of Hart,* 2 *Hill,* 380; *Parmelee* agt. *Thompson,* 7 *Hill,* 77). What the legislature seemed to have intended was to re-enact the previously existing provisions defining the cases in which the property of a debtor might be seized by means of an attachment and not to enlarge the scope of that remedy to such bounds as to render it an engine of oppression and injustice, and the language made use of should be so construed as to maintain and promote that object.

The attachment issued in this case cannot be sustained, for the reasons already indicated: That it has not been shown that the debtors either assigned, disposed of, or secreted, or were about to assign, dispose of, or secrete their property with the intent to defraud their creditors.

It was as incumbent upon the plaintiff to establish the existence of that fact before it could be entitled to an attachment, as it was to show that it had a cause of action in its own

favor against the defendant for the conversion or misappropriation of its property.

Nothing less than that in a case of this nature can warrant the issuing of an attachment. In that respect the proofs produced were fatally defective.

The other case of the English Bank of Rio De Janeiro, limited, against the same defendants, depends upon the same facts, and must be disposed of in the same way.

In both cases the attachments issued must be set aside, but without costs.